1

2

3

4

5 **IN THE UNITED STATES DISTRICT COURT**

6 **FOR THE DISTRICT OF ARIZONA**

7

8 Jeffrey A. Herald,                                    No. CV 14-02188 PHX DLR (MEA)

9                          Petitioner,                 **REPORT AND**
                                                        **RECOMMENDATION**
10 v.

11 Charles L. Ryan, Arizona Attorney General,

12                          Respondents.

13

14 **TO THE HONORABLE DOUGLAS L. RAYES:**

15          Petitioner, who is pro se in this matter, docketed a motion seeking a writ of habeas

16 corpus pursuant to 28 U.S.C. § 2254 on or about October 2, 2014.  Respondents docketed

17 a limited answer to the amended petition for habeas corpus relief on February 5, 2015.

18 See Doc. 13 ("Answer").   On February 13, 2015, Petitioner docketed a reply to the

19 answer to the petition.  See Doc. 17.  On February 20, 2015, Petitioner docketed a motion

20 to strike the pleading at Doc. 17 and also docketed a reply to the answer to his petition.

21 See Doc. 18 & Doc. 19.

22          **I Procedural background**

23          A grand jury indictment returned September 17, 2008, charged Petitioner (using

24 his own and an additional nine "aka" identities) with 39 counts of fraudulent schemes and

25 artifices, class 2 felonies, and 39 counts of theft, class 2, 3, 4, 5, and 6 felonies (based

26 upon the amount allegedly stolen). See Doc. 13 (Answer), Exh. A.  Thirteen of the

27 counts, encompassing seven victims, involved Petitioner's "legal services" business and

28 alleged he misrepresented to clients that he was a licensed attorney.  Id., Exh. A.  The

remaining counts pertained to a "loan origination" business. Id., Exh. A.

Petitioner was initially represented in his criminal proceedings by retained counsel, who subsequently withdrew from representation.  Id., Exh. B & Exh. C.  The state trial court thereafter appointed Mr. Wallin as Petitioner's defense counsel.  On August 3, 2009, Petitioner sought to remove Mr. Wallin as counsel because he "considered [Petitioner] guilty without going through several boxes of evidence;" he had interviewed "several witnesses," including family members, but "came up with a total different story than reality;" and because he had "no clue about [Petitioner's] case." Id., Exh. D.  On December 29, 2009, Petitioner again moved to substitute counsel.  Id., Exh. E. The state trial court denied these motions, finding that there was no legal basis to justify a change in defense counsel.  Id., Exh. F.

On May 18, 2010, Petitioner again sought to remove Mr. Wallin as counsel, asserting that Mr. Wallin had interviewed only one of Petitioner's proposed witnesses and that he had "corrupted the case" by interviewing state witnesses.  Id., Exh. H. Petitioner filed two additional motions to remove Mr. Wallin.  Id., Exhs. I & J.  Mr. Wallin subsequently filed ten motions in limine, addressing multiple evidentiary issues. Id., Exhs. K–T. The trial court eventually granted Petitioner's motion to change counsel and directed that Mr. Wallin "meet and confer with the newly assigned attorney to discuss the history and progress of this case, its charges, and interviews thus far conducted." Id., Exh. U.

On October 25, 2010, Ms. Shoemaker was appointed to represent Petitioner.  Id., Exh. V.  On January 11, 2011, with the trial scheduled to begin on February 14, 2011, Ms. Shoemaker filed a motion pursuant to Rule 11, Arizona Rule of Criminal Procedure, requesting that Petitioner undergo a mental evaluation, although Petitioner had previously been found competent in July 2010.  Id., Exh. W & Exhs. X & Y.  Ms. Shoemaker argued that she had personally witnessed Petitioner suffer extreme mood swings during during legal visits and phone calls.  Id., Exh. X.  The motion was granted, Petitioner was determined to be competent, and the trial was re-set for November 7, 2011.  Id.,  Exh. Z.

1  Ms. Shoemaker then re–urged all of Mr. Wallin's previously filed motions. Id., Exh. AA

2          On May 2, 2011, Petitioner filed a "petition to compel," asking the state court to

3  order defense counsel "to work with [Petitioner]."  Id., Exh. BB.  Petitioner avowed that

4  he did not want to dismiss counsel, "as she seems capable to handle [his] case."  Id., Exh.

5  BB.  Petitioner averred, however, that counsel had not visited him often enough and that

6  counsel "[had] not moved forward on this case much at all to prepare for trial."  Id., Exh.

7  BB.  Petitioner further alleged that he and his counsel suffered from a lack of

8  communication and that he had not received certain documents he had requested from

9  her. Id., Exh. BB.  In a minute entry dated June 2, 2011, in response to Petitioner's

10  request, the trial court stated that its practice was to avoid involvement in the attorney–

11  client relationship unless there was a motion to change counsel before the court.  Id., Exh.

12  CC.  Petitioner then avowed to the trial court that the issues raised in his motion to

13  compel had been "satisfactorily resolved, except for an issue regarding counsel obtaining

14  Petitioner's 'Quick Books.'" Id., Exh. CC.

15          On August 9, 2011, the parties averred they were ready for a trial commencing

16  November 7, 2011.  Id., Exh. DD  On August 26, 2011, a settlement conference was

17  conducted, during which the settlement judge reviewed with Petitioner the charges

18  against him and the potential sentences he faced if found guilty.   Id., Exh. EE at 4–6.  At

19  that time the state offered Petitioner a plea agreement that would allow Petitioner to plead

20  guilty to three counts of fraudulent schemes as class 2 felonies with one prior conviction,

21  with a sentencing range of 10 to 20 years on each count, with the court retaining

22  discretion to decide whether the sentences would be concurrent or consecutive. Id., Exh.

23  EE at 5.  The plea agreement also required Petitioner to plead guilty to five additional

24  counts of fraudulent schemes and receive sentences of probation on those convictions, to

25  be commenced after Petitioner served the terms of imprisonment.  Id., Exh. EE at 5–6.

26  The court advised Petitioner at that time that, if he proceeded to trial and was convicted

27  on most or all of the charges, he could potentially spend the rest of his life in prison.  Id.,

28  Exh. EE at 6.

1    Petitioner initially responded that he was legally innocent of the charges because
2    he had run an "honest business" and that was merely the victim of a recession and clients
3    who had falsified information.  Id., Exh. EE at 8–9.  The prosecutor then summarized the
4    evidence against Petitioner regarding both the legal services and loan businesses.  Id.,
5    Exh. EE at 13–18.  Petitioner disputed the state's allegations and noted he had witnesses
6    who said that he had actually closed some loans, thereby providing the agreed-upon
7    services and arguing that, therefore, he could not be guilty of fraud.  Id., Exh. EE at 18–
8    25.  The judge (J. Schwartz) advised Petitioner that "the risk [was] huge" if Petitioner
9    went to trial, particularly in light of his multiple prior felonies.  Id., Exh. EE at 30.
10   Petitioner said "I'm totally innocent in this case," but stated that he and his lawyer would
11   have to discuss the plea deal.  He stated "it would be better if we could come down a little
12   bit."  Id., Exh. EE at 33.

13   Petitioner brought "witnesses" with him to the settlement conference in an effort
14   to bolster his argument that he had run a legitimate business and that he had not
15   defrauded his clients.  Id., Exh. EE at 11-14.  The prosecutor again summarized the
16   evidence that would be presented against Petitioner, including the fact that he had
17   previously been imprisoned for fraud schemes and theft.  Id., Exh. EE at 13 & 16.  The
18   prosecutor noted Petitioner had represented to his victims that he was a licensed attorney.
19   Id., Exh. EE at 13-14.  The prosecutor delineated Petitioner's mortgage "scheme," noting
20   that he had represented to victims that he could fund their multi-million dollar projects
21   "in house" if he failed to acquire financing for the projects through third-parties.  Id.,
22   Exh. EE at 13-17.  Petitioner again offered the "testimony" of an individual at the
23   settlement conference who stated that they had given Petitioner $80,000 and he had
24   returned the loan amount in full.  Id., Exh. EE at 20.  Petitioner again asserted that he had
25   "closed" the loans his victims complained of but that he had not done it in a sufficiently
26   timely fashion or at an interest rate sufficiently low enough to keep his clients from
27   asserting they had been defrauded.  Id., Exh. EE at 18-22.

28

The settlement conference was continued on September 16, 2011.  Id., Exh. FF. The court stated:

>  [O]bviously the worst case scenario is if the Judge gave a 23–year term and did three of them consecutively. That can add up to 69 years. I mean we have to have that possibility. But the best case scenario is a five year term on each count, all three of them to run concurrently. That's a five–year term.

Id., Exh. FF at 4.  Petitioner stated that he was 53 years of age and also noted the possibility that he could get "five times three which is 15 years." Id., Exh. FF at 5.  At the beginning of the settlement conference the court discussed with Petitioner potential sentencing judges, noting the parties had agreed that Judge Barton, who had been the assigned trial judge, would not sentence Petitioner.  The prosecutor allowed that, if Petitioner would accept the plea agreement they would expand the "bottom" of the sentencing range in the plea agreement on each of the three counts to five years, and that she had "twisted arms" to get the five year "bottom".  Id., Exh. FF at 3–4 & 15-16.

After a recess to consult with his counsel and his wife, who was also present, and in the presence of the Deputy (because Petitioner was in custody), Petitioner agreed to the plea deal.  Exh. FF at 20-21.  At that time the parties agreed Petitioner would be sentenced by Judge Granville.  Id., Exh. FF at 22. Petitioner then entered a guilty plea. Id., Exh. GG.

The plea agreement, dated September 16, 2011, stipulated that Petitioner would plead guilty to Amended Counts 1, 3 and 5, charging fraudulent schemes and artifices as class 2 felonies with one prior felony conviction, and Counts 7 and 13, charging fraudulent schemes and artifices as class 2 felonies.  Id., Exh. HH.  Counts 1, 3 and 5 carried a presumptive sentence of 9.25 years, a minimum of 6 years (4.5 if the court made exceptional circumstances findings), and a maximum of 18.5 years.  Id., Exh. HH at 18–25.

The presentence report recommended Petitioner be sentenced to concurrent, presumptive terms of imprisonment on each count of conviction.  Id., Exh. II.  The state's sentencing recommendation detailed Petitioner's history of arrests on fraud charges and

1  eight felony convictions in four states since 1979. Id., Exh. JJ.

2      Defense counsel filed a sentencing memorandum, which stated that the five guilty

3  pleas involved legal practices counts that had already been resolved by the Arizona State

4  Bar Association, and that the victims had received refunds of any fees paid to Petitioner.

5  Id., Exh. KK.  Counsel further stated that Petitioner took responsibility for misleading

6  those victims. Id., Exh. KK at 2.  With regard to the counts involving the commercial

7  loans, counsel averred Petitioner had "worked to get the loans funded," but that those

8  clients "were not always happy with the loan terms." Id., Exh. KK at 3. Counsel cited two

9  clients for whom Petitioner believed that he had earned the fees paid to Petitioner. Id.,

10  Exh. KK at 4. Counsel also provided information on mitigating sentencing factors such as

11  Petitioner's family support, mental health concerns, and remorse. Id., Exh. KK at 5.

12      At Petitioner's sentencing on November 18, 2011, the state court (Judge

13  Granville) heard from two character witnesses for Petitioner, then entered judgment on

14  the five counts set forth in the plea agreement.  Id., Exh. LL. The prosecutor made

15  additional statements regarding Petitioner's conduct, including comments from victims.

16  Id., Exh. LL at 13–21. Petitioner responded that the prosecutor's facts were inaccurate

17  and disputed the victims' comments.  Id., Exh. LL at 21–25.  Petitioner asserted that the

18  prosecutor could not "open my QuickBooks on the computer," which would have showed

19  that he had refunded money on loan contracts. Id., Exh. LL at 22. Petitioner stated that

20  defense counsel "has the files" and "has gone through them," and that the court should

21  look at his spreadsheet showing he had made partial payments of monies owed to his

22  victims.  Id., Exh. LL at 24. Petitioner asked the court to follow the presentence report

23  with regard to imposing sentence. Id., Exh. LL at 21–25.

24      Defense counsel then spoke on Petitioner's behalf and averred she had acquired

25  fifteen boxes of documents from Mr. Wallin, which documents were obtained from

26  Petitioner's business office. Id., Exh. LL at 26. She argued that Petitioner's company had

27  actually tried to assist the victims, although the victims did suffer harm. Counsel noted

28  the court had a list of victims whose money had been returned to them. Id., Exh. LL at

24–32. She then noted Petitioner's medical problems and argued the presumptive term of imprisonment be imposed. Id., Exh. LL at 24–32.

Before imposing sentence, the state court cited as mitigating factors Petitioner's age, that Petitioner had repaid many of the victims, his acknowledgment of responsibility, and health issues. Id., Exh. LL at 34. The court then sentenced Petitioner to mitigated terms of eight years imprisonment on Counts 1, 3 and 5, with the term on Count 1 consecutive to Count 3 and the term on Count 5 concurrent with Count 3 and consecutive to Count 1. Id., Exh. LL at 34.  The court imposed a term of five years probation each on Counts 7 and 13, to begin after Petitioner's discharge from prison. Petitioner also received credit for 984 days of presentence incarceration.   After sentence was imposed, Petitioner clarified with the court that the his aggregate sentence was 16 years. Id., Exh. LL at 36.

On December 27, 2011, Petitioner filed a timely notice of post–conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, and counsel was appointed to represent him in his Rule 32 proceedings.   Id., Exh. MM.  On June 29, 2012, Petitioner's appointed counsel filed notice avowing that they had reviewed the record, transcripts, and correspondence from Petitioner, trial counsel's files, and a draft Rule 32 petition prepared by Petitioner, and that after doing so he was unable to find any colorable claims for relief to present in a Rule 32 petition. Id., Exh. NN.

Petitioner filed a pro per Rule 32 petition asserting he received ineffective assistance of counsel because counsel failed to obtain "full discovery," did not interview witnesses, and "never worked with Petitioner to prepare for trial."  Petitioner also alleged his counsel failed to prepare mitigating factors at sentencing and gave Petitioner erroneous advice which prevented him from making an informed decision on whether to accept the plea agreement.  Petitioner also argued that the state had violated his right to due process by failing to provide "full disclosure" and that the state trial court had violated his right to due process by failing to consider a motion to change counsel that he alleged was filed at sentencing. Id., Exh. OO.

1     The state trial court denied relief in Petitioner's Rule 32 action in a decision
2 entered January 11, 2013.  Id., Exh. TT.  The court concluded that relief was precluded
3 pursuant to Rule 32.2(a)(3), Arizona Rules of Criminal Procedure, because Petitioner had
4 waived the enumerated claims "when he validly entered into the plea agreement."  Id.,
5 Exh. TT.  The court found the Rule 32 action was, therefore, subject to summary
6 dismissal pursuant to Arizona Rule of Criminal Procedure 32.6.  Id., Exh. TT.

7     Petitioner sought review of this decision by the Arizona Court of Appeals.
8 Petitioner argued his trial counsel rendered ineffective assistance by failing to "get full
9 discovery" from the state and by not meeting with him often enough.  Petitioner alleged
10 counsel failed to present mitigating evidence at sentencing and erroneously advised him
11 that he would receive a term of no more than seven or eight years imprisonment if he
12 entered into the plea agreement.  Petitioner further alleged counsel lied when she
13 provided the factual basis for the plea.  Petitioner also asserted he was denied his right to
14 the effective assistance of counsel because counsel appeared at sentencing even though
15 he had "fired" her two weeks prior and because she failed to investigate facts and
16 interview witnesses.  Petitioner also alleged the state did not provide full disclosure and
17 that the trial court erred because it failed to consider a motion for a change of counsel that
18 was allegedly filed after Petitioner pled guilty.  Petitioner also asserted that the trial judge
19 should have recused himself because the judge allegedly knew Petitioner's uncle.
20 Petitioner also argued he was innocent of the charges against him because there was
21 insufficient evidence to support his convictions.  Id., Exh. UU.

22     Attached to Petitioner's pleading to the Arizona Court of Appeals in his Rule 32
23 action, and offered as evidence in this habeas action, is a typescript of a "report" from
24 Joseph Kalcantu of Houston, Texas, which avers that he was retained by a former
25 Governor of Texas to investigate the bringing of criminal charges against Petitioner by
26 Maricopa County.  Id. (Answer), Exh. WW, Attach.  The letter avers that the fraud
27 charges against Petitioner were the result of corporate materials stolen by Jeffrey
28 Stallcup, a former employee, and provided to a Maricopa County detective "without a
search warrant."  Id., Exh. WW, Attach.  The letter references taped telephone

- 8 -

conversations from 2006 in which a Maricopa County investigator conveyed to Petitioner's clients that he was defrauding them.  Id., Exh. WW, Attach.  The letter averred it was "known" that Mr. Wallin and Ms. Shoemaker (Petitioner's plea and sentencing counsel) "made a deal with Ms. Van Wie [the prosecutor] on other clients in order to sacrifice Mr. Herald's case..."  Id., Exh. WW, Attach.  The letter concludes that, having been an FBI investigator on fraud cases for twenty-five years, Mr. Kalcantu had determined Petitioner had not committed fraud.  Id., Exh. WW, Attach.  The letter is signed as "signature on file," and is not notarized nor sworn.  See id., Exh. WW, Attach.

The Arizona Court of Appeals granted review but denied relief. Id., Exh. XX.  The appellate court found that Petitioner's ineffective assistance claims were without merit. The court also concluded Petitioner had waived any claim regarding the state's discovery when he pled guilty and that there was no evidence in the record regarding Petitioner's alleged motion to change counsel after sentencing.  Id., Exh. XX.  The Court of Appeals further determined that Petitioner had failed to support his judicial bias claim and that he had failed to demonstrate any potential prejudice.  Id., Exh. XX.  The court also determined Petitioner's insufficient evidence claim was without merit because Petitioner had provided a sufficient factual basis to support his guilty pleas on the counts of conviction. Id., Exh. XX.

On October 2, 2014, Petitioner filed the instant petition seeking a writ of habeas corpus. Petitioner asserts he is entitled to federal habeas relief because he was denied his right to the effective assistance of counsel and because he was subjected to an illegal search and seizure.  Petitioner further argues he is entitled to relief because the prosecutor and defense counsel engaged in "corruption" and because there was "corruption and [a] major conflict of the sentencing judge".  Doc. 1.

## II Analysis

### A. Exhaustion and procedural default

Absent specific circumstances, the District Court may only grant federal habeas relief on the merits of a claim which has been "properly" exhausted in the state courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Coleman

v. Thompson, 501 U.S. 722, 729–30, 111 S. Ct. 2546, 2554–55 (1991). To properly exhaust a federal habeas claim, the petitioner must afford the state courts the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner. See, e.g., Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v. Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005). The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either in a direct appeal or in a petition for post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999). See also Date v. Schriro, 619 F. Supp. 2d 736, 762-63 (D. Ariz. 2008); Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007).

To satisfy the "fair presentment" prong of the exhaustion requirement, the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary." Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001). See also Woods v. Sinclair, 764 F.3d 1109, 1129 (9th Cir. 2014). In Baldwin v. Reese, the Supreme Court reiterated that the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged constitutional errors. See 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004). Therefore, if the petitioner did not present the federal habeas claim to the state court as asserting the violation of a specific federal constitutional right, as opposed to violation of a state law or a state procedural rule, the federal habeas claim was not "fairly presented" to the state court. See, e.g., id., 541 U.S. at 33, 124 S. Ct. at 1351. See also Arrendondo v. Neven, 763 F.3d 1122, 1138 (9th Cir. 2014).

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts. See Woodford v. Ngo, 548 U.S. 81, 92–93, 126 S. Ct. 2378, 2387 (2006). If it is clear the

habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim.  See, e.g., id., 548 U.S. at 92, 126 S. Ct. at 2387.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims.  See Castille, 489 U.S. at 351–52, 109 S. Ct. at 1060.  Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594–95 (1991); Coleman v. Thompson, 501 U.S. 722, 727–28, 111 S. Ct. 2546, 2553–57(1991); Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002). "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'" Ellis v. Armenakis, 222 F.3d 627, 632 (9th Cir. 2000), quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).

To constitute an adequate and independent state procedural ground sufficient to support a state court's finding of procedural default, "a state rule must be clear, consistently applied, and well-established at the time of [the] petitioner's purported default." Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001).  See also Murray v. Schriro, 745 F.3d 984, 1015-16 (9th Cir. 2014)  A state rule is considered consistently applied and well-established if the state courts follow it in the "vast majority of cases." Scott, 567 F.3d at 580, quoting Dugger v. Adams, 489 U.S. 401, 417 n.6, 109 S. Ct. 1211, 1221 n.6 (1989).  Additionally, for the proffered state procedural bar to preclude the consideration of a habeas claim "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."  Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S. Ct. 2633, 2638–39 (1985).  See also Harris v. Reed, 489 U.S. 255, 261–62, 109 S. Ct. 1038, 1042 (1989); Scott, 567 F.3d at 581–82.

In Arizona, claims not previously presented to the state courts in either a direct appeal or on collateral review in an action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive Rule 32 action is permitted.  See Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a) & (b) (successive petitions are limited to claims of being held in custody beyond sentence expiration, newly-discovered material facts, requests for delayed appeal, significant change in the law retroactively applicable that would probably overturn conviction or sentence, and actual innocence); Spreitz v. Ryan, 617 F. Supp. 2d 887, 899–900 (D. Ariz. 2009).  See also Hurles v. Ryan, 752 F.3d 768, 780 (9th Cir.), cert. denied, 135 S.Ct. 710 (2014).

Because Petitioner pled guilty and waived his right to a direct appeal and because Petitioner has now completed a Rule 32 action, the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims, which have been found to be consistently applied and well-established, bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims,  Accordingly, Petitioner has exhausted, but procedurally defaulted, any claim not fairly presented to the Arizona Court of Appeals in his Rule 32 action.  See Hurles, 752 F.3d at 780; Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002). See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002).

**B. Cause and prejudice**

The Court may consider the merits of a procedurally defaulted claim if the petitioner establishes cause for their procedural default and prejudice arising from that default. "Cause" is a legitimate excuse for the petitioner's procedural default of the claim and "prejudice" is actual harm resulting from the alleged constitutional violation.  See Clabourne v. Ryan, 745 F.3d 362, 375 (9th Cir. 2014); Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991).  Under the "cause" prong of this test, Petitioner bears the burden of establishing that some objective factor external to the defense impeded his compliance with Arizona's procedural rules.  See Moorman v. Schriro, 426 F.3d 1044, 1058 (9th Cir.

2005); Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998); Martinez–Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir. 1996).  To establish prejudice, the petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595 (1982).  See also Correll v. Stewart, 137 F.3d 1404, 1415–16 (9th Cir. 1998).  The Ninth Circuit Court of Appeals has also stated that prejudice is established by a petitioner's "actual innocence."  See Vosgien v. Persson, 742 F.3d 1131, 1134-35 (9th Cir. 2014).  Generally, a petitioner's lack of legal expertise is not cause to excuse procedural default.  See, e.g., Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 908 (9th Cir. 1986).

To establish prejudice, the petitioner must show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting his criminal proceedings with constitutional violations.  See Vickers, 144 F.3d at 617; Correll, 137 F.3d at 1415–16.  Establishing prejudice requires a petitioner to prove that, "but for" the alleged constitutional violations, there is a reasonable probability he would not have been convicted of the same crimes. See Manning v. Foster, 224 F.3d 1129, 1135–36 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999). Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause.  See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982); Thomas, 945 F.2d at 1123 n.10.

A state criminal defendant does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings.  See, e.g., Pennsylvania v. Finley, 481 U.S. 551, 555,  107 S. Ct. 1990, 1993 (1987); Graves v. McEwen, 731 F.3d 876, 878 (9th Cir. 2013).  Accordingly, the general rule is that errors of counsel during a state post-conviction action cannot constitute "cause" to excuse the procedural default of a federal habeas claim.  See, e.g., Coleman, 501 U.S. at 752, 111 S. Ct. at 2565; Clabourne, 745 F.3d at 374.  However, the Supreme Court's opinion in Martinez v. Ryan, 132 S. Ct. 1309 (2012), established a limited exception to this general rule, which exception applies only to Sixth Amendment ineffective assistance of counsel

claims.  <u>Martinez</u> held that inadequate assistance of post conviction counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  <u>Id.</u> at 1315.  In <u>Ha Van Nguyen v. Curry</u>, 736 F.3d 1287, 1293 (9th Cir. 2013), the Ninth Circuit expanded <u>Martinez</u>, holding that this doctrine can also apply to excuse the procedural default of claims asserting ineffective assistance of direct appeal counsel.  Petitioner has not asserted such a claim.

### C. Fundamental miscarriage of justice

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice.  <u>See</u> <u>Dretke v. Haley</u>, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); <u>Schlup v. Delo</u>, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); <u>Murray v. Carrier</u>, 477 U.S. 478, 485–86, 106 S. Ct. 2639, 2649 (1986).  A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent.  <u>See</u> <u>Murray</u>, 477 U.S. at 485–86, 106 S. Ct. at 2649; <u>Thomas v. Goldsmith</u>, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged.  <u>See</u> <u>Dretke</u>, 541 U.S. at 393, 124 S. Ct. at 1852; <u>Wildman v. Johnson</u>, 261 F.3d 832, 842–43 (9th Cir. 2001).

### D.  Standard of review on exhausted claims

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law or the state court decision was an unreasonable application of clearly established federal law.  <u>See</u> 28 U.S.C. § 2254(d); <u>Carey v. Musladin</u>, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); <u>Musladin v. Lamarque</u>, 555 F.3d 834, 838 (9th Cir. 2009).  "Under AEDPA, a federal court may not grant a

1
2
3
4
5
6
7
8
9

petition for a writ of habeas corpus unless the state court's adjudication on the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1390 (2012), <u>quoting</u> 28 U.S.C. § 2254(d)(1).   The AEDPA requires that the habeas court review the "last reasoned decision" from the state court, "which means that when the final state court decision contains no reasoning, we may look to the last decision from the state court that provides a reasoned explanation of the issue." <u>Murray v. Schriro</u>  746 F.3d at 441, <u>quoting</u> <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

> A state court applies a clearly established standard unreasonably only if no "reasonable interpretation of the controlling [Supreme Court] standard" can "support [the state court's] legal ruling." <u>Panetti v. Quarterman</u>, 551 U.S. 930, 953, 127 S.Ct. 2842, [] (2007). So, when evaluating the reasonableness of a state court's application of a general standard, we must defer to any "principled reason for the state court to distinguish between the case before it and Supreme Court precedent." <u>Murdoch v. Castro</u>, 609 F.3d 983, 992 (9th Cir. 2010) (en banc). Moreover, § 2254(d)(1), the Supreme Court recently explained,
>
>> does not require state courts to extend [a Supreme Court] precedent or license federal courts to treat the failure to do so as error. Thus, "if a habeas court must extend a rationale before it can apply to the facts at hand," then by definition the rationale was not "clearly established at the time of the state-court decision." AEDPA's carefully constructed framework "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law."
>
> <u>White</u>, 134 S.Ct. at 1706 (internal citations omitted) (quoting <u>Yarborough</u>, 541 U.S. at 666, 124 S.Ct. 2140).

<u>Arrendondo</u>, 763 F.3d at 1133-34.

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, [] 131 S.Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." [] 131 S.Ct., at 786. We will not lightly

conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. [] 131 S.Ct., at 786 (internal quotation marks omitted).

Burt v. Titlow, 134 S.Ct. 10, 15-16 (2013).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law as stated in *United States Supreme Court opinions*, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result.  See, e.g., Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); Soto v. Ryan, 760 F.3d 947, 957 (9th Cir. 2014); McKinney v. Ryan, 730 F.3d 903, 909 (9th Cir. 2013); Runningeagle v. Ryan, 686 F.3d 758, 785 (9th Cir. 2012), cert. denied, 133 S. Ct. 2766 (2013)..

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. See McNeal v. Adams, 623 F.3d 1283, 1287–88 (9th Cir. 2010). The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000).  See also Cheney v. Washington, 614 F.3d 987, 994 (9th Cir. 2010).

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires.  See Lafler, 132 S. Ct. 1389-90; Panetti v. Quarterman, 551 U.S. 930, 953–54, 127 S. Ct. 2842, 2858–59 (2007); Amado v. Gonzalez, 758 F.3d 1119, 1131 (9th Cir. 2014);

Runningeagle, 686 F.3d at 785-86; Greenway v. Schriro, 653 F.3d 790, 805–06 (9th Cir. 2011); Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008).

### E. Waiver of claims upon entry of guilty plea

Petitioner agreed to plead guilty to the charges against him in a written plea agreement. The United States Supreme Court limited the grounds upon which a state prisoner may seek habeas relief after entering a voluntary and intelligent guilty plea in Tollett v. Henderson, 411 U.S. 258, 93 S. Ct. 1602 (1973) (holding that a knowing and voluntary guilty plea waives all non-jurisdictional defects occurring prior to the entry of the guilty plea). Other than a challenge to the voluntary and intelligent character of the plea itself, a defendant's guilty plea bars federal habeas relief based on pre–plea non–jurisdictional constitutional claims. See Haring v. Prosise, 462 U.S. 306, 319–20, 103 S.Ct. 2368, 2376-77 (1983) ("Our decisions subsequent to Tollett make clear that a plea of guilty does not bar the review in habeas corpus proceedings of all claims involving constitutional violations antecedent to a plea of guilty"); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994) (foreclosing pre-plea ineffective assistance of counsel claim); Ortberg v. Moody, 961 F.2d 135, 137-38 (9th Cir. 1992); Hudson v. Moran, 760 F.2d 1027, 1029–30 (9th Cir. 1985) ("As a general rule, one who voluntarily and intelligently pleads guilty to a criminal charge may not subsequently seek federal habeas corpus relief on the basis of pre–plea constitutional violations."); Mitchell v. Superior Court, 632 F.2d 767, 769 (9th Cir. 1980) . Pre-plea error is considered "jurisdictional" when it implicates the government's power to prosecute the defendant. United States v. Johnston, 199 F.3d 1015, 1019 n.3 (9th Cir.1999). See also United States v. Broce, 488 U.S. 563, 574–76, 109 S.Ct. 757, 765 (1989). For example, Tollett does not foreclose a claim that: a defendant was vindictively prosecuted, see Blackledge v. Perry, 417 U.S. 21, 30–31, 94 S.Ct. 2098, 2103-04 (1974), that the indictment under which a defendant pled guilty placed him in double jeopardy, see Menna v. New York, 423 U.S. 61, 62, 96 S.Ct. 241, 242 (1975), or the statute under which the defendant was indicted is facially unconstitutional. See United States v. Garcia–Valenzuela, 232 F.3d 1003, 1006 (9th Cir.

1  2000).

2      The federal courts have concluded that a plea colloquy must satisfy several

3  requirements in order for a guilty plea to be considered voluntary and knowing.  See, e.g.,

4  Lofter v. Almager, 704 F.3d 645, 647-48 (9th Cir. 2012); Tanner v. McDaniel, 493 F.3d

5  1135, 1146-47 (9th Cir. 2007).  A guilty plea is not considered voluntary and knowing

6  unless a defendant is informed of and waives his privilege against self-incrimination, his

7  right to trial by jury, and his right to confront witnesses.  Tanner, 493 F.3d at 1147, citing

8  Boykin v. Alabama, 395 U.S. 238, 243-44, 89 S. Ct. 1709, 1712-13 (1969).  A defendant

9  must understand the consequences of his plea, including "the range of allowable

10  punishment that will result from his plea."  Little v. Crawford, 449 F.3d 1075, 1080 (9th

11  Cir. 2006).

12      The transcripts of the settlement hearings in this matter and Petitioner's plea

13  colloquy indicate Petitioner's guilty plea was entered knowingly and voluntarily.  At the

14  time he entered his guilty plea the state court found the plea was knowing and voluntary.

15  A state court's factual finding that a plea was voluntary and knowing is entitled to a

16  presumption of correctness by a federal habeas court.  See Lambert v. Blodgett, 393 F.3d

17  943, 982 (9th Cir. 2004); Cunningham v. Diesslin, 92 F.3d 1054, 1060 (10th Cir. 1996).

18  Factual findings of a state court are presumed to be correct and can be reversed by a

19  federal habeas court only when the federal court is presented with clear and convincing

20  evidence. See Miller-El v. Dretke, 545 U.S. 231, 125 S. Ct. 2317, 2325 (2005); Vega v.

21  Ryan, 757 F.3d 960, 965 (9th Cir. 2014).   Petitioner's after-the-fact conclusory

22  allegations that he was incorrectly advised as to the consequences of his guilty plea are

23  not clear and convincing evidence which can overcome the weight of his

24  contemporaneous statements regarding his understanding of the plea agreement.   A

25  petitioner's contemporaneous statements carry substantial weight in determining if his

26  entry of a guilty plea was knowing and voluntary.  See Blackledge v. Allison, 431 U.S.

27  63, 74, 97 S. Ct. 1621, 1629 (1977) ("Solemn declarations in open court carry a strong

28  presumption of verity.   The subsequent presentation of conclusory allegations

1  unsupported by specifics is subject to summary dismissal, as are contentions that in the

2  face of the record are wholly incredible"); Doe v. Woodford, 508 F.3d  563, 571 (9th Cir.

3  2007); Restucci v. Spencer, 249 F. Supp. 2d 33, 45 (D. Mass. 2003) (collecting cases so

4  holding).

5      Because Petitioner entered a knowing and voluntary guilty plea, federal habeas

6  relief is precluded with regard to any pre-plea non-jurisdictional habeas claims, such as

7  allegations of ineffective assistance of counsel which occurred prior to Petitioner's entry

8  of a guilty plea and his allegation that he was denied his Fourth Amendment rights in the

9  investigation of the alleged crimes.

10      **F. Petitioner's claims for relief**

11          **1. Ineffective assistance of counsel**

12      Petitioner argues that he was deprived of his right to the effective assistance of

13  counsel because counsel did not meet with Petitioner often enough, counsel failed to get

14  full discovery from the state, counsel failed to interview witnesses and investigate and

15  pursue facts, and because counsel failed to present evidence of mitigating factors at

16  Petitioner's sentencing.  Petitioner also alleges counsel was lying when she provided the

17  factual basis for the plea and that counsel provided erroneous information regarding the

18  plea and the maximum sentence that could be imposed.  Petitioner raised these claims

19  before the Arizona Court of Appeals in his pro per petition in his state action for post-

20  conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, and the

21  Court of Appeals found the claims without merit. To the extent any of these claims are

22  not precluded by the entry of Petitioner's guilty plea, they are without merit and the

23  Arizona Court of Appeals' decision denying relief on Petitioner's allegation that he was

24  denied his right to the effective assistance of counsel was not clearly contrary to nor an

25  unreasonable application of federal law.

26      The Supreme Court established a two-part test for evaluating ineffective assistance

27  of counsel claims in Strickland v. Washington, 466 U.S. 668, 687 (1984).  The Strickland

28  test applies to a federal habeas petitioner's challenge to a conviction entered upon a guilty

1    plea.  See, e.g., Hill v. Lockhart, 474 U.S. 52 (1985); Washington v. Lampert, 422 F.3d

2    864, 872 (9th Cir. 2005).  In such a context, "the ineffectiveness inquiry probes whether

3    the alleged ineffective assistance impinged on the [petitioner's] ability to enter an

4    intelligent, knowing and voluntary plea of guilty." Lambert, 393 F.3d at 980. To prevail

5    on this claim, Petitioner must show that his counsel's representation fell below the range

6    of competence demanded of counsel in criminal cases and that he suffered actual

7    prejudice as a result of counsel's incompetence. Id. at 873.  Because a petitioner's failure

8    to make the required showing of either deficient performance or prejudice defeats the

9    claim, the court need not address both factors where one is lacking. Strickland, 466 U.S.

10   at 697–700.

> In Hill, the Supreme Court adapted the two-part Strickland standard to
11   > challenges to guilty pleas based on ineffective assistance of counsel,
> holding that a defendant seeking to challenge the validity of his guilty plea
12   > on the ground of ineffective assistance of counsel must show that (1) his
> "counsel's representation fell below an objective standard of
13   > reasonableness," and (2) "there is a reasonable probability that, but for [his]
> counsel's errors, he would not have pleaded guilty and would have insisted
14   > on going to trial." 474 U.S. at 57-59, 106 S. Ct. 366.

15

16   Womack v. Del Papa, 497 F.3d 998, 1002 (9th Cir. 2007).

17       Petitioner was not prejudiced by what he asserts was his counsel's prediction of

18   the sentences that might imposed pursuant to the plea agreement because the state

19   court clearly and repeatedly alerted Petitioner to the potential consequences of his guilty

20   plea, including clarifying with Petitioner that he could be sentenced to a term of sixteen

21   years imprisonment if the sentences were ordered to be served consecutively.   See

22   Womack, 497 F.3d at 1003, citing Doganiere v. United States, 914 F.2d 165, 168 (9th

23   Cir. 1990) (holding that the petitioner "suffered no prejudice from his attorney's

24   prediction because, prior to accepting his guilty plea, the court explained that the

25   discretion as to what the sentence would be").

26       The record in this matter belies all of Petitioner's claims of ineffective assistance

27   of counsel. Petitioner offers only vague and conclusory allegations with regard to any

28   possible prejudice he might have suffered as a result of counsel's alleged inadequacies, as

- 20 -

1    Petitioner faced a total sentence of 63 years imprisonment had he chosen to reject the

2    plea agreement and proceed to trial.  See Greenway v. Schriro, 653 F.3d 790, 804 (9th

3    Cir. 2011) ("[Petitioner]'s cursory and vague [ineffective assistance of counsel claim]

4    cannot support habeas relief.").  Accordingly, the state court's decision that Petitioner

5    was not denied his right to the effective assistance of counsel was not clearly contrary to

6    nor an unreasonable application of Strickland and Hill and Petitioner is not entitled to

7    federal habeas relief on this claim.

8        **2. Petitioner contends he was denied his Fourth Amendment right to be free**

9    **of unreasonable searches and seizures.**

10       A Fourth Amendment claim is not cognizable in a federal habeas action if the

11   petitioner had a "full and fair" opportunity to raise the claim in the state courts.  See, e.g.,

12   Stone v. Powell, 428 U.S. 465, 482, 493, 96 S. Ct. 3037, 3046, 3052  (1976).  In Stone v.

13   Powell the Supreme Court held that "where the State has provided an opportunity for full

14   and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted

15   federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

16   search or seizure was introduced at trial." 428 U.S. at 494, 96 S.Ct. at 3052 (internal

17   citation omitted).  See also Stephens v. Attorney General of Calif., 23 F.3d 248, 249 (9th

18   Cir. 1994).  A federal court may review Fourth Amendment claims in habeas corpus

19   proceedings only if the state court proceeding denied the petitioner an "opportunity for

20   full and fair litigation of a Fourth Amendment claim."  Stone, 428 U.S. at 482, 96 S. Ct.

21   at 3051–53.  See also Woolery v. Arave, 8 F.3d 1325, 1326-28 (9th Cir. 1993); Matthews

22   v. Workman, 577 F.3d 1175, 1194 (10th Cir. 2009)   Whether the state court correctly

23   decided the claim is irrelevant on habeas review as is the issue of whether the petitioner

24   actually raised the Fourth Amendment claim.  See Ortiz-Sandoval v. Gomez, 81 F.3d

25   891, 899 (9th Cir. 1996) ("[t]he inquiry is whether petitioner had the opportunity to

26   litigate his claim, not whether he did in fact do so or even whether the claim was

27   correctly decided.").

28

1    The record of the state proceedings in this case compels the conclusion that

2    Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim.

3    See Moormann v. Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005).   Accordingly, to the

4    extent this claim is not precluded by Tollett, the Court should not review the merits of the

5    claim pursuant to Stone v. Powell.

6        **3. Petitioner contends he is entitled to habeas relief because the prosecutor**

7    **and defense counsel engaged in "corruption."**

8        Petitioner asserts that his counsel and the prosecutor "sacrificed" Petitioner in

9    order to reach plea agreements in other criminal cases.   Petitioner contends that an

10   investigation undertaken at his behest by an alleged ex-FBI agent establishes that the

11   Maricopa County prosecutor's office and the prosecutor assigned to his case engaged in

12   prosecutorial misconduct.   Petitioner arguably presented the factual basis for this claim to

13   the Arizona Court of Appeals in his Rule 32 action, however, Petitioner presented the

14   claim as one of ineffective assistance of trial counsel and, arguably, as a Brady claim,

15   arguing to the court that the prosecutor had not supplied and his counsel had not reviewed

16   nor propounded in his defense all of the evidence seized from his business.

17       Petitioner did not properly exhaust a prosecutorial misconduct claim in the state

18   courts.   Petitioner has not shown cause for nor prejudice arising from this procedural

19   default.   The letter proffered by Petitioner from the purported investigator is neither

20   verified, notarized, nor even signed.   Accordingly, Petitioner has not produced clear and

21   convincing evidence from which the Court might find that Petitioner was prejudiced by

22   the state court's "failure" to consider a claim of prosecutorial misconduct.

23       Additionally, any allegation of prosecutorial misconduct, i.e., that the prosecutor

24   negotiated a plea deal with Petitioner's counsel in some fashion that was in some way

25   nefarious or that the prosecutor withheld material in violation of Brady, would involve a

26   non-jurisdictional pre-plea error which was waived by Petitioner's guilty plea pursuant to

27   Tollett.

28

1      **4. Petitioner alleges that the sentencing judge was corrupt and had a "major"**
2   **conflict of interest.**

3          In his habeas petition Petitioner contends that the sentencing judge and
4   Petitioner's uncle were "great friends," a fact Petitioner alleges he did not know until
5   after his sentencing, and that the judge "did some shady deal[s] at times and did some
6   under handed favors for his friends."  In support of this claim Petitioner proffers a letter
7   alleged to be authored by Petitioner's uncle, which letter is addressed to the presiding
8   judge of the Maricopa County Superior Court.   The letter is not notarized nor
9   accompanied by a sworn affidavit, and lists a return address in Houston, Texas.  In the
10  letter the uncle states that Judge Granville is an old friend and that Mr. Stallcup (which is
11  the last name of Petitioner's ex-wife) convinced the sentencing judge to "throw the book"
12  at Petitioner.  Petitioner also attaches a sworn affidavit from his wife which states that,
13  after the settlement judge and prosecutor left the settlement conference so that Petitioner
14  could confer with his counsel, counsel informed Petitioner that he would receive a
15  maximum sentence of eight years imprisonment if he agreed to the plea deal.

16         Petitioner alleged in his state action for post-conviction relief that the state
17  sentencing judge had a conflict of interest.  Petitioner filed a complaint against the
18  sentencing judge after his sentencing, contending that the judge was extremely
19  unprofessional during Petitioner's sentencing, primarily because the judge was making
20  unwarranted derogatory comments about Petitioner and smiling at Petitioner and his wife
21  during the sentencing proceedings.  The Court of Appeals concluded that Petitioner had
22  failed to support his judicial bias claim and and failed to demonstrate any potential
23  prejudice.   "Herald also claims the sentencing court should have recused itself because
24  the court allegedly knew Herald's uncle.  We deny relief on this issue because Herald
25  offers no evidence the court knew Herald's unidentified uncle and he does not otherwise
26  explain how he suffered any prejudice even if the court did know his uncle."  Answer,
27  Exh. XX.

28

1    The Arizona Court of Appeals' decision denying Petitioner's claim of judicial bias

2 was not clearly contrary to nor an unreasonable application of federal law.

3         To succeed on a judicial bias claim, however, the petitioner must
"overcome a presumption of honesty and integrity in those serving as
4    adjudicators." Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, [] (1975).
In the absence of any evidence of some extrajudicial source of bias or
5    partiality, neither adverse rulings nor impatient remarks are generally
sufficient to overcome the presumption of judicial integrity, even if those
6    remarks are "critical or disapproving of, or even hostile to, counsel, the
parties, or their cases." Liteky v. United States, 510 U.S. 540, 555, 114
7    S.Ct. 1147, [] (1994);
8

9 Larson v. Palmateer, 515 F.3d 1057, 1067 (9th Cir. 2008).  On federal habeas review, the

10 Court "must ask whether the state trial judge's behavior rendered the trial so

11 fundamentally unfair as to violate federal due process under the United States

12 Constitution." Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995). "To sustain a claim

13 of this kind, there must be an 'extremely high level of interference' by the trial judge

14 which creates 'a pervasive climate of partiality and unfairness.'" Id., quoting United

15 States v. DeLuca, 692 F.2d 1277, 1282 (9th Cir. 1982).

16         The Supreme Court held long ago that a "fair trial in a fair tribunal is a
basic requirement of due process." In re Murchison, 349 U.S. 133, 136, 75
17    S.Ct. 623, [] (1955). "Fairness of course requires an absence of actual bias
in the trial of cases. But our system of law has always endeavored to
18    prevent even the probability of unfairness." Id.; cf. Mistretta v. United
States, 488 U.S. 361, 407, 109 S.Ct. 647, [] (1989) ("The legitimacy of the
19    Judicial Branch ultimately depends on its reputation for impartiality and
nonpartisanship."). This most basic tenet of our judicial system helps to
20    ensure both the litigants' and the public's confidence that each case has
been adjudicated fairly by a neutral and detached arbiter.
21    "The Due Process Clause of the Fourteenth Amendment establishes a
constitutional floor, not a uniform standard," for a judicial bias claim.
22    Bracy v. Gramley, 520 U.S. 899, 904, 117 S.Ct. 1793, [] (1997). While
most claims of judicial bias are resolved "by common law, statute, or the
23    professional standards of the bench and bar," the "floor established by the
Due Process Clause clearly requires a 'fair trial in a fair tribunal' before a
24    judge with no actual bias against the defendant or interest in the outcome of
his particular case." Id. at 904–05, 117 S.Ct. 1793 (quoting Withrow v.
25    Larkin, 421 U.S. 35, 46, 95 S.Ct. 1456, [] (1975)). The Constitution
requires recusal where "the probability of actual bias on the part of the
26

27

28

- 24 -

judge or decisionmaker is too high to be constitutionally tolerable." <u>Withrow</u>, 421 U.S. at 47, 95 S.Ct. 1456. Our inquiry is objective. <u>Caperton v. A.T. Massey Coal Co.</u>, 556 U.S. 868, 881, 129 S.Ct. 2252, [] (2009). We do not ask whether [the judge] actually harbored subjective bias. <u>Id.</u> Rather, we ask whether the average judge in her position was likely to be neutral or whether there existed an unconstitutional potential for bias. <u>Id.</u> "Every procedure which would offer a possible temptation to the average ... judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the [accused] due process of law." <u>Tumey v. Ohio</u>, 273 U.S. 510, 532, 47 S.Ct. 437, [] (1927).

 [Petitioner] need not prove actual bias to establish a due process violation, just an intolerable risk of bias.... Thus, we must ask "whether 'under a realistic appraisal of psychological tendencies and human weakness,' the [judge's] interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" <u>Caperton</u>, 556 U.S. at 883–84, 129 S.Ct. 2252 (quoting <u>Withrow</u>, 421 U.S. at 47, 95 S.Ct. 1456). Due process thus mandates a "stringent rule" that may sometimes require recusal of judges "who have no actual bias and who would do their very best to weigh the scales of justice equally" if there exists a "probability of unfairness." <u>Murchison</u>, 349 U.S. at 136, 75 S.Ct. 623. But this risk of unfairness has no mechanical or static definition. It "cannot be defined with precision" because "[c]ircumstances and relationships must be considered." <u>Id.</u>

...Non-pecuniary conflicts "that tempt adjudicators to disregard neutrality" also offend due process. <u>Caperton</u>, 556 U.S. at 878, 129 S.Ct. 2252. A judge must withdraw where she acts as part of the accusatory process, <u>Murchison</u>, 349 U.S. at 137, 75 S.Ct. 623, "becomes embroiled in a running, bitter controversy" with one of the litigants, <u>Mayberry</u>, 400 U.S. at 465, 91 S.Ct. 499, or becomes "so enmeshed in matters involving [a litigant] as to make it appropriate for another judge to sit," <u>Johnson v. Mississippi</u>, 403 U.S. 212, 215–16, 91 S.Ct. 1778, [] (1971).

<u>Hurles v. Ryan</u>, 752 F.3d 768, 788-90 (9th Cir. 2014).

The state court's decision denying Petitioner's claim of judicial bias was not clearly contrary to nor an unreasonable application of federal law.  Petitioner asserted in the state court that the judge smiled and made unwelcome comments about Petitioner.  These allegations fail to present a viable claim of constitutionally-impermissible judicial bias.  <u>See</u>, <u>e.g.</u>, <u>Alley v. Bell</u>, 307 F.3d 380, 388 (6th Cir. 2002), <u>citing</u> Liteky, 510 U.S. at 555, 114 S.Ct. 1147.  Additionally, the letter proffered by Petitioner which purports to

1   be from Petitioner's uncle and on it's face states that the uncle influenced Judge Granville

2   to "throw the book" at Petitioner when sentencing him, is not notarized nor sworn and, as

3   such, does not constitute "evidence" from which the Court could find that Petitioner's

4   federal constitutional right to due process was violated by Judge Granville at sentencing.

5          **IV Conclusion**

6          Petitioner's knowing and voluntary entry of a guilty plea waived all habeas claims

7   of non-jurisdictional error occurring prior to the entry of his guilty plea.  Additionally, to

8   the extent Petitioner properly exhausted his federal habeas claims in the state courts, the

9   state appellate court did not err in concluding that Petitioner was not denied his right to

10  the effective assistance of counsel, nor did the state court err in finding Petitioner was not

11  subjected to judicial bias.   Petitioner's Fourth Amendment claim is not cognizable

12  because Petitioner had a full and fair opportunity to litigate this claim in the state courts.

13         Therefore,

14         **IT IS RECOMMENDED that**   Mr. Herald's application for a writ of habeas

15  corpus pursuant to section 2254 be **denied**.

16

17         This recommendation is not an order that is immediately appealable to the Ninth

18  Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

19  Appellate Procedure, should not be filed until entry of the District Court's judgment.

20         Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have

21  fourteen (14) days from the date of service of a copy of this recommendation within

22  which to file specific written objections with the Court. Thereafter, the parties have

23  fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2,

24  Local Rules of Civil Procedure for the United States District Court for the District of

25  Arizona, objections to the Report and Recommendation may not exceed seventeen (17)

26  pages in length.

27         Failure to timely file objections to any factual or legal determinations of the

28  Magistrate Judge will be considered a waiver of a party's right to de novo appellate

consideration of the issues.  See United States v. Reyna–Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right.

Dated this 23rd day of February, 2015.


_____
Mark E. Aspey
United States Magistrate Judge